# In the
# United States Court of Appeals
## for the Eighth Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

LONNIE JOSEPH PARKER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Arkansas – Texarkana, No. 4:19-cr-40018-SOH-1.
The Honorable Susan O. Hickey, Judge Presiding.

## ADDENDUM TO BRIEF OF DEFENDANT-APPELLANT

RONALD W. CHAPMAN
CHAPMAN LAW GROUP
1441 West Long Lake Road
Suite 310
Troy, MI 48098
(248) 644-6326

*Counsel for Defendant-Appellant*
*Lonnie Joseph Parker*

 

# TABLE OF CONTENTS

Jury Instructions dated October 28, 2022, excerpted pp. 6-7, 18
    (R. Doc. 170) ........................................................................Add. 1

Order Denying Defendant's First Motion for New Trial dated May 5, 2023
    (R. Doc. 203) ........................................................................Add. 4

Order Denying Defendant's Second Motion for New Trial dated July 10, 2024
    (R. Doc. 211) ......................................................................Add. 11

Judgment dated August 27, 2024 (R. Doc. 226) ............................................Add. 20

**JURY INSTRUCTION NO. $\underline{\text{l}}$**

Counts One through Five charge the defendant with the unauthorized distribution of a Schedule II controlled substance (oxycodone) and a Schedule V controlled substance (promethazine with codeine solution). These crimes have three essential elements, which are:

*One*, the defendant knowingly or intentionally distributed the controlled substance on or about the date charged;

*Two*, the defendant knew at the time of distribution that the oxycodone or the promethazine with codeine solution was a controlled substance; and

*Three*, the defendant knowingly or intentionally distributed the substance without a legitimate medical purpose outside the usual course of professional practice.

Now I will provide more detailed instructions on these terms. You are instructed that:

(A) Oxycodone is a Schedule II controlled substance within the meaning of the law. Promethazine with codeine solution is a Schedule V controlled substance within the meaning of the law.

(B) The term "distribute" means the delivery or transfer of a controlled substance. This term includes the writing or issuing of a prescription.

(C) The term "intentionally" means that the act was done deliberately.

(D) The term "knowingly" means that the individual understands the nature of his conduct and has not acted through ignorance, mistake, or accident.

6

**Add. 1**

JURY INSTRUCTION NO. ___

(E) The terms "legitimate medical purpose" and "usual course of professional practice" mean acting in accordance with appropriate criteria for prescribing controlled substances in the State of Arkansas. You have heard testimony about what constitutes the usual course of professional practice and legitimate medical purpose for the prescription of controlled substances in the State of Arkansas, and you are to weigh that evidence in the same way that you would weigh any other evidence in this case.

In considering whether the defendant issued a prescription without a legitimate medical purpose and not in the usual course of professional practice, you may consider all the defendant's actions and the circumstances surrounding them.

For you to find the defendant guilty, the government must prove beyond a reasonable doubt that, at the time he issued the controlled substance prescription, he knew that he was acting or he intended to act without a legitimate medical purpose and outside the usual course of professional practice.

If you unanimously find that the government has proven each of these elements beyond a reasonable doubt as to each of the counts charged in Counts One through Five, then you must find the defendant guilty of the crime charged in that particular count. Record your determination on the Verdict Forms, which will be submitted to you with these instructions.

Source: 8th Cir. Model Crim. Jury Instr. § 6.21.841B (2018); *United States v. Katz*, 445 F.3d 1023, 1028 (8th Cir. 2006).

7

**Add. 2**

JURY INSTRUCTION NO. __14__

You may find that the defendant acted knowingly if you find beyond a reasonable doubt that the defendant believed there was a high probability that Noel Crabtree, Luke Holley, and Joshua Franklin were addicted to oxycodone, and that Gregory Thomas and Kenn'tae Jones were diverting promethazine with codeine cough syrup, and that he took deliberate actions to avoid learning of that fact. Knowledge may be inferred if the defendant deliberately closed his eyes to what would otherwise have been obvious to him. A willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts. You may not find the defendant acted "knowingly" if you find he was merely negligent, careless, or mistaken as to whether Noel Crabtree, Luke Holley, and Joshua Franklin were addicted to oxycodone and as to whether Gregory Thomas and Kenn'tae Jones were diverting promethazine with codeine cough syrup.

8th Cir. Model Crim. Jury Instr. § 7.04 (2018).

**Add. 3**

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

UNITED STATES OF AMERICA                                        PLAINTIFF

v.                                    Case No. 4:19-cr-40018

LONNIE JOSEPH PARKER                                           DEFENDANT

## ORDER

Before the Court is Defendant Lonnie Joseph Parker's Motion for New Trial.  ECF No. 196.  The government has responded.  ECF No. 199.  Thus, the matter is ripe for the Court's consideration.

## I. BACKGROUND

On October 28, 2022, a jury returned a guilty verdict against Defendant on two counts of distribution of a Schedule II controlled substance without an effective prescription, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and two counts of distribution of a Schedule V controlled substance without an effective prescription, in violation of 21 U.S.C. § 841(a)(1), (b)(3).  During trial and on October 18, 2022, Shelli Chupik, a diversion investigator for the Drug Enforcement Administration (DEA), testified.  As is relevant to Defendant's instant motion, Chupik testified regarding the 2016 Center for Disease Control (CDC) Guidelines (the 2016 Guidelines) and the Arkansas State Medical Board's regulations.  Also during trial and on October 18, 2022, the government called Dr. Mark Rubenstein as an expert witness.  Dr. Rubenstein is a medical practitioner and, like Chupik, testified regarding the 2016 Guidelines and the Arkansas State Medical Board's regulations.  Together, Chupik and Dr. Rubenstein's testimonies provided information regarding the morphine milligram equivalent (MME) dosage limits set forth by these guidelines and regulations.

**Add. 4**

On March 3, 2023, Defendant filed the instant motion.  Relying on Federal Rule of Criminal Procedure 33, Defendant argues that he is entitled to a new trial because the CDC issued new guidelines in 2022 (the 2022 Guidelines), one week after the conclusion of his trial.  Defendant contends that the 2022 Guidelines support his trial theory: a physician has *discretion* in deciding what medication (and how much of that medication) is appropriate for a particular patient. Defendant asserts that, at trial, the government relied on the 2016 Guidelines (which were "promulgated into law in the Regulations of the Arkansas State Medical Board") as the standard of medical care against which the jury was to assess Defendant's prescribing practices.  ECF No. 196, at 4.  In Defendant's view, if a jury was able to assess Defendant's practices using the 2022 Guidelines, that jury would conclude that Defendant "was writing lawful, socially beneficial prescriptions."  ECF No. 196, at 9.  Ultimately, Defendant maintains that "[t]he evaluation of the risks and benefits of opiate therapy is a matter of medical judgement [sic] and should not be dictated to doctors by the DEA through prosecution, and the CDC guidelines should not have been used against Dr. Parker at trial.  As made clear by the 2022 guidelines."  ECF No. 196, at 16.

The government opposes Defendant's request for a new trial and argues that "the 2022 CDC Guidelines are not newly discovered evidence that is material and would result in an acquittal upon retrial."  ECF No. 199, at 1.  In the government's view, the 2022 Guidelines are merely "recommendations for the medical community" and do not constitute newly discovered evidence within the meaning of Rule 33.  ECF No. 199, at 2.  Further, the government argues that the applicable standard of care is set forth by Arkansas Code Annotated § 17-95-201 and the Arkansas State Medical Board's regulations, which were admitted into evidence and referred to regularly by both parties.  ECF No. 199, at 3-4.  The government concludes by noting the fact that Defendant's motion is inherently contradictory, as he "argues on one hand that the 2016 CDC Guidelines 'should not have been used against [him] at trial,' but, on the other hand, argues that the 2022 CDC

Guidelines are material evidence that would result in an acquittal in a new trial." ECF No. 199, at 5 (citation omitted). For the following reasons, the Court finds that Defendant's motion for a new trial should be denied.

## II. DISCUSSION

Rule 33 provides that "[u]pon a defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). More specifically, Rule 33 allows a district court to grant a new trial where evidence has newly been discovered. Fed. R. Crim. P. 33(b). Although Rule 33 does not itself define "newly discovered evidence," the Court finds Federal Rule of Evidence 401 instructive. Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

"[T]he primary purpose of the newly discovered evidence rule is to afford relief when, 'despite the fair conduct of the trial, . . . facts unknown at the trial' make clear that 'substantial justice was not done.'" *United States v. Ugalde*, 861 F.2d 802, 807 (5th Cir. 1988) (alteration in original) (citation omitted). However, such motions are disfavored, *United States v. Glinn*, 965 F.3d 940, 942 (8th Cir. 2020), and "[a] defendant is not entitled to a new trial 'unless the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred,'" *United States v. Meeks*, 742 F.3d 838, 840 (8th Cir. 2014) (citation omitted). The decision to grant or deny a party's Rule 33 motion is well within a district court's wide discretion, and "its decision will not be reversed on appeal except for a clear abuse of that discretion." *Ferina v. United States*, 302 F.2d 95, 108 (8th Cir. 1962) (citation omitted).

The Eighth Circuit has set forth a five-prong test for courts to rely on when deciding whether to grant a Rule 33 motion. *See, e.g.*, *United States v. Chappell*, 990 F.3d 673, 677 (8th

Cir. 2021). The five prongs are as follows:

> (1) the evidence was actually newly discovered since trial; (2) the moving party acted diligently; (3) the newly discovered evidence is neither merely cumulative nor impeaching; (4) the newly discovered evidence is material to the issues involved; and (5) it is probable that the newly discovered evidence would produce an acquittal.

*Id.* Satisfying these five prongs is a "heavy burden." *United States v. Johnson*, 721 F. App'x 140, 141 (3d Cir. 2018) (citation omitted). With these standards in mind, the Court turns to the parties' arguments.

By way of background, the 2016 Guidelines and Arkansas State Medical Board's regulations were not only admitted into evidence, but they were referenced regularly throughout the trial by both parties when discussing the applicable standard of care. They were also referenced in the agreed-upon jury instructions. *See* ECF No. 170, at 7 (describing "legitimate medical purpose" and "usual course of professional practice" as "acting in accordance with appropriate criteria for prescribing controlled substances in the State of Arkansas"). With this background in mind, Defendant's argument can be summarized as follows: the jury relied on the 2016 Guidelines as the applicable standard of care, and because the 2016 Guidelines *do not* recognize a physician's discretion in prescribing medication, a jury convicted Defendant; the 2022 Guidelines were issued shortly after Defendant's trial, and the 2022 Guidelines *do* recognize that a physician has discretion when prescribing medication; and Defendant is entitled to a new trial because, in light of the CDC's issuance of new guidelines, a jury should be able to consider those new guidelines and find that Defendant acted within his discretion in prescribing medication, namely oxycodone and promethazine HCl with codeine solution.

Although Defendant characterizes his motion as one advocating for a new trial based on newly discovered evidence, it is, in essence, a motion advocating for a new trial based on a change in the law. His argument is equivalent to an argument that a new trial is warranted based on a

recently issued judicial opinion, *United States v. Perrin*, No. 2:14-cr-205, 2019 WL 3997418, at *2 (W.D. Penn. Aug. 23, 2019), a recently issued administrative decision, *United States v. King*, 735 F.3d 1098, 1108-09 (9th Cir. 2013), or a new legal theory, *United States v. Cook*, No. 3:10-cr-522, 2012 WL 1455217, at *2 (N.D. Ohio April 26, 2012), all of which do not qualify as "newly discovered evidence" within the meaning of Rule 33. "While the definition of 'evidence' under Rule 33 is certainly broad, it is not so broad as to include a change in the law." *United States v. Akins*, 1994 WL 148712, at *2 (N.D. Ill. April 12, 1994). Thus, if viewing Defendant's argument as a change-in-the-law argument, his motion must be denied, as he has not presented the Court with any newly discovered evidence.

Even if the Court assumes that the 2022 Guidelines *do* qualify as newly discovered evidence, denial of Defendant's instant motion is nevertheless appropriate because Defendant cannot satisfy the Eighth Circuit's five-prong test. *See Chappell*, 990 F.3d at 677. Specifically, Defendant cannot show that "it is probable that the newly discovered evidence would produce an acquittal." *Id.* "With regard to the fifth prong, the 'district court is required to make a credibility determination as part of its probability-of-acquittal' determination." *United States v. Wilson*, 624 F.3d 640, 663 (4th Cir. 2010) (quoting *United States v. Kelly*, 539 F.3d 172, 189 (3d Cir. 2008)). When determining whether the moving party has satisfied the fifth prong, "the district court cannot view the [new evidence] in a vacuum; it must weigh the [new evidence] against all of the other evidence in the record, including the evidence already weighed and considered by the jury in the defendant's first trial." *United States v. Rubashkin*, No. 08-cr-1324, 2010 WL 4362455, at *7 (N.D. Iowa Oct. 27, 2010) (first alteration in original) (citation omitted).

Here, over the course of eight days, the jury heard testimony from sixteen (16) witnesses. Among these witnesses were experts, former patients whose care was encompassed by the indictment, and former patients whose care was not encompassed by the indictment. Defendant

**Add. 8**

also testified.  Defendant testified regarding his clinical and prescribing practices, and he explained to the jury medical decisions that he made on behalf of patients whose care was charged in the indictment.  More specifically, Defendant explained why he prescribed certain MMEs to certain patients.  Additionally, the jury viewed dozens of exhibits, which included hundreds of pages of patient medical records, photographs from Defendant's medical clinic, and copies of patient care contracts executed between Defendant and his patients.[1]  The jury viewed the 2016 Guidelines, along with the Arkansas State Medical Board's regulations.  The jury instructions defined "legitimate medical purpose" and "usual course of professional practice" as "acting in accordance with the appropriate criteria for prescribing controlled substances in the State of Arkansas."  ECF No. 170, at 7.  During their almost eight-hour deliberation, the jury had access to every exhibit presented at trial.

When viewing the 2022 Guidelines alongside the substantial evidence presented in Defendant's October 2022 trial, the Court finds that Defendant has not shown that a new jury (with access to the 2022 Guidelines) would acquit Defendant of the crimes charged.  The jury in Defendant's October 2022 trial was presented with a copious amount of evidence and weighed that evidence against the standards of professional practice which were in place during the dates of the crimes charged.[2]  Ultimately, Defendant is not entitled to a new trial based on the CDC's issuance of the 2022 Guidelines.  *See Rubashkin*, 2010 WL 4362455, at *7; *Chappell*, 990 F.3d at 677.

---

[1]These lists of witnesses and exhibits presented at trial are not exhaustive.  A full list of witnesses and exhibits can be found in the record.  *See* ECF Nos. 171, 172, 173, 174.

[2]The Court notes that each of the charges in the Second Superseding Indictment pertain to Defendant's distribution and dispersal of controlled substances in the year 2018.  *See* ECF No. 114.  Thus, the Court notes that the 2016 Guidelines, *not the 2022 Guidelines*, were in effect when Defendant distributed the controlled substances charged in the indictment.

**Add. 9**

### III. CONCLUSION

Accordingly, for the foregoing reasons, Defendant's Motion for a New Trial (ECF No. 196) is hereby **DENIED**.

**IT IS SO ORDERED**, this 15th day of May, 2023.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge

**Add. 10**

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

UNITED STATES OF AMERICA                                              PLAINTIFF

v.                                    Case No. 4:19-cr-40018

LONNIE JOSEPH PARKER                                                DEFENDANT

## ORDER

Before the Court is Defendant Lonnie Joseph Parker's Motion for New Trial *Pursuant to Fed. R. Crim. P. 33*. ECF No. 206. The government has responded. ECF No. 207. The Court finds the matter ripe for consideration.

## I. BACKGROUND

On October 28, 2022, a jury returned a guilty verdict against Defendant on two counts of distribution of a Schedule II controlled substance without an effective prescription, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and two counts of distribution of a Schedule V controlled substance without an effective prescription, in violation of 21 U.S.C. § 841(a)(1), (b)(3).

On March 3, 2023, Defendant filed a Motion for New Trial arguing that new evidence, in the form of 2022 Centers for Disease Control and Prevention (CDC) Guidelines released after the conclusion of Defendant's trial, warranted a new trial. ECF No. 196. On May 15, 2023, the Court denied Defendant's Motion for New Trial. ECF No. 203. On June 27, 2023, Defendant substituted Ronald W. Chapman II as counsel of record in place of his previous attorneys, Jeffrey M. Rosenzweig and Peter Drake Mann. ECF No. 204.

On August 10, 2023, Defendant filed another Motion for New Trial *Pursuant to Fed. R. Crim. P. 33*. ECF No. 206. Defendant asserts that the Court should permit Defendant's untimely Federal Rule of Criminal Procedure 33 Motion due to excusable neglect, namely the ineffective

**Add. 11**

assistance of prior counsel.  *See id.*  Defendant argues that a new trial is warranted because a jury instruction was given in error at Defendant's trial, and Defendant's former counsel was ineffective for failing to object to that jury instruction and for failing to timely file a motion under Rule 33 regarding the instruction.  *Id.*  Specifically, Defendant takes issue with Jury Instruction Number Six (6), which Defendant argues incorrectly permitted "conviction for violation of the State of Arkansas prescribing criteria."[1]  *Id.* at 6; *see also* ECF No. 107, p. 6.  Jury Instruction Number Six (6) provides:

> Counts One through Five charge the defendant with the unauthorized distribution of a Schedule II controlled substance (oxycodone) and a Schedule V controlled substance (promethazine with codeine solution).  These crimes have three essential elements, which are:
>
> > *One*, the defendant knowingly or intentionally distributed the controlled substance on or about the date charged;
> >
> > *Two*, the defendant knew at the time of distribution that the oxycodone or the promethazine with codeine solution was a controlled substance; and
> >
> > *Three*, the defendant knowingly or intentionally distributed the substance without a legitimate medical purpose outside the usual course of professional practice.
>
> Now I will provide more detailed instructions on these terms. You are instructed that:
>
> > (A) Oxycodone is a Schedule II controlled substance within the meaning of the law. Promethazine with codeine solution is a Schedule V controlled substance within the meaning of the law.
> >
> > (B) The term "distribute" means the delivery or transfer of a controlled substance.  This term includes the writing or issuing of a prescription.
> >
> > (C) The term "intentionally" means that the act was done deliberately.

---

[1] While Defendant argues that trial counsel was ineffective for failing to object to this jury instruction, Defendant admits that Defendant's counsel has not yet received transcripts of the charge conference, and "has not been able to ascertain whether Defendant's counsel objected to Jury Instruction Number Six (6)."  *See* ECF No. 206, n.1. Transcripts from this trial are not presently available to either party, as they have not yet been completed.  However, Defendant still asserts that because trial counsel did not specifically file a Rule 33 motion objecting to the jury instruction, he was ineffective.  *Id.*

**Add. 12**

(D) The term "knowingly" means that the individual understands the nature of his conduct and has not acted through ignorance, mistake, or accident.

(E) The terms "legitimate medical purpose" and "usual course of professional practice" mean acting in accordance with appropriate criteria for prescribing controlled substances in the State of Arkansas. You have heard testimony about what constitutes the usual course of professional practice and legitimate medical purpose for the prescription of controlled substances in the State of Arkansas, and you are to weigh that evidence in the same way that you would weigh any other evidence in this case.

In considering whether the defendant issued a prescription without a legitimate medical purpose and not in the usual course of professional practice, you may consider all the defendant's actions and the circumstances surrounding them.

For you to find the defendant guilty, the government must prove beyond a reasonable doubt that, at the time he issued the controlled substance prescription, he knew that he was acting or he intended to act without a legitimate medical purpose and outside the usual course of professional practice.

If you unanimously find that the government has proven each of these elements beyond a reasonable doubt as to each of the counts charged in Counts One through Five, then you must find the defendant guilty of the crime charged in that particular count. Record your determination on the Verdict Forms, which will be submitted to you with these instructions.

Source: 8th Cir. Model Crim. Jury Instr. § 6.21.841B (2018); *United States v. Katz*, 445 F.3d 1023, 1028 (8th Cir. 2006).

ECF No. 107, p. 6.  Defendant takes issue with the language "the terms 'legitimate medical purpose' and 'usual course of professional practice' mean acting in accordance with appropriate criteria for prescribing controlled substances in the State of Arkansas."  *Id.*  He claims that it was error for the terms to be based on state standards as opposed to national standards.  Defendant cites to *Ruan v. United States*, 597 U.S. 450, 142 S. Ct. 2370, 213 L. Ed. 2d 706 (2022), to support his notion that "knowledge" can be proven by "circumstantial evidence," not "direct evidence of a state standard."  ECF No. 206, p. 11.  Further, he argues, had the jury not been confined to this

**Add. 13**

state standard in the jury instruction, they may not have found the Defendant guilty. Thus, a new trial is warranted.

Defendant requests that the Court address Defendant's ineffective-assistance-of-counsel claim now, instead of first going through a direct appeal then to a 28 U.S.C. § 2255 proceeding in order to save the parties' time and expense of going through a collateral proceeding. Further, Defendant states, "should a new trial be granted [pursuant to a 28 U.S.C. § 2255 proceeding], both parties would be prejudiced given the age of the case and the failing memories of witness." ECF No. 206, p. 2.

## II. DISCUSSION

Federal Rule of Criminal Procedure 33 provides that "[u]pon a defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "Any motion for a new trial founded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)2. "When an act must or may be done within a specified period, the court on its own may extend the time, or for good cause may do so on a party's motion made . . . after the time expires if the party failed to act because of excusable neglect." Fed R. Crim. P. 45(b)(1)(B).

In *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993), the Supreme Court of the United States set out four factors to be considered when determining if a late filing is due to excusable neglect: "(1) the danger of prejudice to the opposing party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith." *United States v. Boesen*, 599 F.3d 874, 879 (8th Cir. 2010) (cleaned up); *see Stutson v. United States,* 516 U.S. 193, 196-

4

**Add. 14**

98, 116 S. Ct. 600, 133 L. Ed. 2d 571 (1996) (holding that *Pioneer* applies to criminal cases). "The four *Pioneer* factors do not carry equal weight; the excuse given for the late filing must have the greatest import." *Gibbons v. United States*, 317 F.3d 852, 854 (8th Cir. 2003). "While prejudice, length of delay, and good faith might have more relevance in a closer case, the reason-for-delay factor will always be critical to the inquiry." *Id.*

Defendant argues that the first *Pioneer* factor, danger of unfair prejudice to the opposing party, cuts both ways. ECF No. 206, p. 3. Defendant recognizes that courts ordinarily review ineffective-assistance-of-counsel claims pursuant to a 28 U.S.C. § 2255 proceeding. *See United States v. McAdory*, 501 F.3d 868, 972-73 (8th Cir. 2007). However, he asserts that because his ineffective-assistance-of-counsel claim will either be reviewed now or later at a § 2255 proceeding, a full review of his claim now favors finality in this case. ECF No. 206, p. 3. Defendant argues that neither party would be prejudiced by a swift review pursuant to Rule 33. *Id.* The government argues that there "is real danger of prejudice to the United States, considering that there has already been a lengthy trial that encompassed vast amounts of evidence and a large number of witnesses." ECF No. 207, p. 3. The Court acknowledges that this matter has been pending before the Court for an extended period of time but notes that a vast amount of delay in this case is due to Defendant's own requests. *See* ECF Nos. 22, 24, 26 (motions to continue trial by Defendant). The Court finds that this factor weighs slightly in favor of denying defendant's untimely request for a motion for new trial based on excusable neglect. *See United States v. Long*, 2012 WL 1190254, at *2 (D.S.D. Apr. 9, 2012), *aff'd*, 721 F.3d 920 (8th Cir. 2013) (finding that the first *Pioneer* factor weighed in favor of denying a defendant's request for new trial based on excusable neglect where the majority of the delay in the case was due to defendant's own requests); *see also Boesen*, 599 F.3d at 879 (finding that it was not error for the district court to find prejudice to the government

**Add. 15**

under the first factor of *Pioneer* because the delay could cause witnesses to "become unavailable and memories [to] fade").

The Court now turns to the second *Pioneer* factor, length of delay and its potential impact on judicial proceedings.  Defendant argues that this factor cuts in his favor because he "retained new counsel who recognized the untimely filing and wishes to fully exhaust Defendant's right to effective assistance of counsel and a full review of the issues in this case."  ECF No. 206, p. 3. The government asserts that "the delay has the potential to impact judicial proceedings, in that possibly granting a new trial several months after the prior trial was completed would consume a large share of judicial resources, particularly considering the length and complexity of the first trial."  ECF No. 207, p. 3.  Defendant's motion is almost nine (9) months late.  *See Boesen*, 599 F.3d at 879.  The Court finds that this factor cuts against granting a motion for new trial.

The third factor, the reason for the delay, including whether it was within the reasonable control of the movant, is the most important factor in this analysis.  Defendant contends the reason for the delay was the ineffective assistance of his trial counsel.  ECF No. 206, p. 3-4.  Separating Defendant from previous counsel, Defendant argues that he "was not advised of his right to file a timely motion for a new trial . . . and was not informed by prior counsel that counsel had missed the deadline and elected to pursue an alternative and unsuccessful new theory" (the 2022 CDC guidelines as "new evidence").  *Id.*  Specifically, Defendant asserts that his trial counsel was ineffective "for failing to seek a new trial and for failing to object to Jury Instruction Number Six (6)."  *Id.* at 6.  The government argues that trial counsel's assistance was not ineffective and that his "failure to file the instant motion within the time period set forth in Rule 33 was not the product of neglect, but was most likely due to a recognition that the bases asserted in the motion lack credence."  ECF No. 207, p. 3.

**Add. 16**

To show ineffective assistance of counsel, Defendant must establish both that (1) "counsel's representation fell below an objective standard of reasonableness"; and (2) that counsel's failure prejudiced him in that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 687–88, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  However, before addressing the merits of Defendant's ineffective-assistance-of-counsel claim, the Court must first determine whether his claim is ripe for determination.

"Ineffective-assistance-of-counsel claims . . . are 'generally not a basis for direct appeal and instead should be properly raised in a 28 U.S.C. § 2255 action.'"  *United States v. Davis*, 452 F.3d 991, 994 (8th Cir. 2006) (quoting *United States v. Soriano–Hernandez,* 310 F.3d 1099, 1105 (8th Cir. 2002)).  Courts "consider such arguments on direct appeal only where the record has been fully developed, where counsel's ineffectiveness is readily apparent, or where to delay consideration of the claim would lead to a plain miscarriage of justice."  *Davis*, 452 F.3d at 994 (citing *United States v. Cook,* 356 F.3d 913, 919-20 (8th Cir. 2004)).  The Court finds that no such exceptional circumstance exists here.

Defendant asserts that the Court can find support from a South Dakota District Court case in determining that it is appropriate to find excusable neglect and address Defendant's ineffective-assistance-of-counsel claim now.  *See United States v. Long*, 2012 WL 1190254 (D.S.D. Apr. 9, 2012), *aff'd*, 721 F.3d 920 (8th Cir. 2013).  In *Long*, the court evaluated Defendant's post-trial ineffective-assistance-of-counsel claim finding that it was appropriate to address the claim pursuant to Rule 33 where the court "had the full transcript available for review," and had "ordered further briefing on the issue of excusable neglect, ineffective assistance of counsel, and whether

**Add. 17**

or not" the defendant's rights had been violated. *Id.* at *5. The same cannot be said for the present case.

The trial transcript in the present case is currently not available for review by either party and such review is pertinent to Defendant's ineffective-assistance-of-counsel claim. The Court does not find trial counsel's performance *obviously* deficient, especially without a fully developed record. Accordingly, the Court finds that Defendant's ineffective-assistance-of-counsel claim is not yet ripe for consideration and is more appropriately considered pursuant to a collateral 28 U.S.C. § 2255 proceeding. *See United States v. Mugan*, 441 F.3d 622, 631 (8th Cir. 2006) (finding where no factual record had been developed to support the claim, the claim was "best reviewed in collateral proceedings"); *see also United States v. Ramirez-Hernandez*, 449 F.3d 824, 826-27 (8th Cir. 2006) ("A properly developed record for purposes of determining a claim of ineffective assistance of counsel would include cross-examination by [a defendant] of his counsel on the question of what advice counsel gave him."); *see also Davis*, 452 F.3d at 994 (finding the record "not developed at all," and consequently deferring to § 2255 proceedings to address defendant's ineffective-assistance-of-counsel claim); *see also Cook*, 356 F.3d at 919-20 (refusing to address defendant's ineffective-assistance-of-counsel claims on direct appeal and finding his claims were "better left to a proceeding under 28 U.S.C. § 2255 proceeding" where there was an undeveloped factual record and adding to the list of circumstances in which it is proper to consider an ineffective-assistance claim without waiting for collateral review those situations in which counsel's ineffectiveness was "readily apparent or obviously deficient").

Without a fully developed record, the Court finds that Defendant's ineffective-assistance-of-counsel claim is not yet ripe. As such, the Court cannot find whether the reason for the delay

**Add. 18**

in filing an untimely motion for new trial weighs in favor of Defendant or the government.[2] Defendant's ineffective-assistance-of-counsel claim is more properly raised in a separate motion under 28 U.S.C. § 2255. Consequently, Defendant's Motion for New Trial *Pursuant to Fed. R. Crim. P. 33* (ECF No. 206) should be denied.

### III. CONCLUSION

Accordingly, for the foregoing reasons, Defendant's Motion for a New Trial *Pursuant to Fed. R. Crim. P. 33* (ECF No. 206) is hereby **DENIED**.

**IT IS SO ORDERED**, this 10th day of July, 2024.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge

---

[2] Regarding the fourth *Pioneer* factor, the government does not argue and the Court does not find that Defendant acted in bad faith in filing his untimely motion for new trial.

**Add. 19**

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

Western District of Arkansas

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| **v.** | |
| | Case Number:    4:19CR40018-001 |
| LONNIE JOSEPH PARKER | USM Number:    21657-009 |
| | Ronald W. Chapman, II |
| | Defendant's Attorney |

## THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

☒ was found guilty on count(s)   One (1), Two (2), Three (3), and Four (4) of the Second Superseding Indictment on October 28, 2022.
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and C.F.R. § 1306.04 | Distribution of a Schedule II Controlled Substance Without an Effective Prescription | 08/01/2018 & 01/04/2019 | 1 & 4 |
| 21 U.S.C. §§ 841(a)(1), 841(b)(3), and 21 C.F.R. § 1306.04 | Distribution of a Schedule V Controlled Substance Without an Effective Prescription | 08/29/2018 & 11/17/2018 | 2 & 3 |

The defendant is sentenced as provided in pages 2 through ___7___ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☒ The defendant has been found not guilty on count(s)   Five (5) of the Second Superseding Indictment on October 28, 2022.

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

August 26, 2024
Date of Imposition of Judgment

/s/ Susan O. Hickey
Signature of Judge

Honorable Susan O. Hickey, Chief United States District Judge
Name and Title of Judge

August 27, 2024
Date

**Add. 20**

AO 245B (Rev. 09/19)    Judgment in Criminal Case
                        Sheet 2 — Imprisonment

|  | Judgment — Page | 2 | of | 7 |
|---|---|---|---|---|

DEFENDANT:          LONNIE JOSEPH PARKER
CASE NUMBER:        4:19CR40018-001

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a

total term of:   **eighty-seven (87) months on Count One and Count Four; twelve (12) months on Count Two and Count Three, with all counts to run concurrently with each other; for a total term of eighty-seven (87) months., with credit for time served in federal custody.**

☒   The court makes the following recommendations to the Bureau of Prisons:
    That the defendant be housed in FCI Texarkana.

☐   The defendant is remanded to the custody of the United States Marshal.

☐   The defendant shall surrender to the United States Marshal for this district:

    ☐   at _____   ☐ a.m.   ☐ p.m.   on _____ .

    ☐   as notified by the United States Marshal.

☒   The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☒   before 2 p.m. on _____October 9, 2024_____ .

    ☐   as notified by the United States Marshal.

    ☐   as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

**Add. 21**

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page ___3___ of ____7____

DEFENDANT:          LONNIE JOSEPH PARKER
CASE NUMBER:     4:19CR40018-001

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of: **three (3) years on Count One and Count Four, and one (1) year on Count Two and Count Three, with all terms to run concurrently for a total term of three (3) years.**

## MANDATORY CONDITIONS

1.  You must not commit another federal, state or local crime.
2.  You must not unlawfully possess a controlled substance.
3.  You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

    ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. (check if applicable)

4.  ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5.  ☒ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.  ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.  ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

**Add. 22**

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 3A — Supervised Release

| | Judgment—Page | 4 | of | 7 |
|---|---|---|---|---|

DEFENDANT:        LONNIE JOSEPH PARKER
CASE NUMBER:      4:19CR40018-001

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.


## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.


Defendant's Signature    _____     Date _____

**Add. 23**

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 3A — Supervised Release

|  | Judgment—Page | 5 | of | 7 |
|---|---|---|---|---|

DEFENDANT:      LONNIE JOSEPH PARKER
CASE NUMBER:   4:19CR40018-001

## SPECIAL CONDITIONS OF SUPERVISION

1.  The defendant shall submit his person, residence, and/or vehicle to a search conducted by the U.S. Probation Office at a reasonable time and in a reasonable manner based upon reasonable suspicion of evidence of a violation of any condition of supervised release. Failure to submit to a search may be grounds for revocation.

2.  The defendant shall not purchase, possess, use, distribute, or administer marijuana or obtain or possess a medical marijuana card or prescription. If the defendant is currently in possession of a medical marijuana card, he will turn it over immediately to the probation office.

**Add. 24**

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
                 Sheet 5 — Criminal Monetary Penalties

Judgment — Page   6   of    7   

DEFENDANT:           LONNIE JOSEPH PARKER
CASE NUMBER:       4:19CR40018-001

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Restitution** | **Fine** | **AVAA Assessment\*** | **JVTA Assessment\*\*** |
|---|---|---|---|---|---|
| **TOTALS** $ | Count 1 100.00<br>Count 2  25.00<br>Count 3  25.00<br>Count 4 100.00 | $ -0- | $ -0- | $ -0- | $ -0- |

☐   The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐   The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*\*\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |

| | | | |
|---|---|---|---|
| **TOTALS** | $ _____ | $ _____ | |

☐   Restitution amount ordered pursuant to plea agreement  $ _____

☐   The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐   The court determined that the defendant does not have the ability to pay interest and it is ordered that:

     ☐   the interest requirement is waived for   ☐  fine   ☐  restitution.

     ☐   the interest requirement for   ☐  fine   ☐  restitution is modified as follows:

\* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
\*\* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
\*\*\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
                        Sheet 6 — Schedule of Payments

Judgment — Page ___7___ of ___7___

DEFENDANT:        LONNIE JOSEPH PARKER
CASE NUMBER:      4:19CR40018-001

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A**  ☒  Lump sum payment of $ __250.00__ due immediately.

    ☐  not later than _____ , or

    ☐  in accordance with   ☐ C,   ☐ D,   ☐ E, or   ☐ F below; or

**B**  ☐  Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

**C**  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
    _____ *(e.g., months or years),* to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D**  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
    _____ *(e.g., months or years),* to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a
    term of supervision; or

**E**  ☐  Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from
    imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**  ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

    Case Number
    Defendant and Co-Defendant Names                                Joint and Several         Corresponding Payee,
    *(including defendant number)*                    Total Amount                  Amount                if appropriate

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

**Add. 26**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on December 9, 2024, an electronic copy of the Addendum to Brief of Appellant was filed with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. The undersigned also certifies that all participants are registered CM/ECF users and will be served via the CM/ECF system.

/s/ *Ronald W. Chapman II*
Ronald W. Chapman II, Esq., LL.M.