# In The
# United States Court of Appeals
## for The Eighth Circuit

UNITED STATES OF AMERICA

*Plaintiff-Appellee,*

v.

LONNIE JOSEPH PARKER

*Defendant-Appellant.*

Appeal from the United States District Court for the
Western District of Arkansas – Texarkana, No. 4:19-cr-40018-SOH-1
The Honorable Susan O. Hickey, Judge Presiding.

## REPLY BRIEF OF DEFENDANT-APPELLANT
## LONNIE JOSEPH PARKER

Ronald W. Chapman II, Esq.
LL.M MI Bar No. P73179
1441 W. Long Lake Rd., Ste. 310
T: (248) 644-6326
F: (248) 644-6324
RWChapman@Chapmanlawgroup.com

*Attorney for Defendant-Appellant Lonnie
Joseph Parker*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................iv

STATEMENT OF THE REPLY ISSUES ...........................................................1

ARGUMENT ......................................................................................................2

    I.    The Evidence is Insufficient to Convict Dr. Parker Because the Government did not Prove that he was Drug Trafficking ......................................................2

        A.    The Court Should Decide the Disjunctive Versus Conjunctive Question ..........................................................................................2

        B.    Dr. Parker's Convictions Should be Vacated Because the Government Did Not Prove that he was Engaged in Drug Trafficking ...................................................................................4

    II.    The District Court Abused Its Discretion in Giving a Deliberate Ignorance Instruction ............................................................................10

        A.    The District Court did not Identify a Particular Fact that Dr. Parker Took Deliberate Action to Avoid Learning Because Such A Fact did Not Exist ........................................................10

        B.    Dr. Parker Did Not Contest Abuse and Diversion ......................12

        C.    The Improper Deliberate Ignorance Instruction Impacted the Outcome of Trial.......................................................................14

    III.    The District Court Abused Its Discretion Charging the Jury to Convict Dr. Parker Based on a State Standard for Prescribing ................................16

        A.    Dr. Parker's Challenge to the Jury Instruction is Not Waived .....16

        B.    The District Court Improperly Instructed to Convict Based on State Prescribing Criteria ........................................................18

C.      Dr. Parker Suffered Prejudice from the Erroneous Jury Instruction..................................................................20

IV.     The District Court Clearly Erred in Calculating Drug Weight Because it Failed to Identify What Portion of "Overprescribed" Prescriptions were Legitimate and Improperly Used "Course of Conduct" to Balloon Drug Weight ....................................................22

        A.      Dr. Parker was Convicted of Distribution and not Possession ....22

        B.      The Court Should Remand so that Dr. Parker Can Be Resentenced ..........................................................................24

CONCLUSION ................................................................................27

# TABLE OF AUTHORITIES

**Cases:**

*Global-Tech Appliances,*
  *Inc. v. SEB S.A.*, 563 U.S. 754 (2011) ................................................1, 10, 11, 12

*Gonzales v. Oregon,*
  546 U.S. 243 (2006) ...................................................................... 1, 18

*Johnson v. United States,*
  576 U.S. 591 (2015) ........................................................................4

*Ruan v. United States,*
  597 U.S. 450 (2022) ...................................................................... 1, 18

*United States v. Anderson,*
  67 F.4th 755 (6th Cir. 2023) .............................................................9

*United States v. Browne,*
  89 F.4th 662 (8th Cir. 2023) .............................................................1

*United States v. Chastain,*
  979 F.3d 586 (8th Cir. 2020) ............................................................2

*United States v. Corrales-Portillo,*
  779 F.3d 823 (8th Cir. 2015) ...........................................................14

*United States v. Dace,*
  842 F.3d 1067 (8th Cir. 2016) .........................................................27

*United States v. Dooley,*
  580 F.3d 682 (8th Cir. 2009) ..........................................................15

*United States v. Farish,*
  535 F.3d 815 (8th Cir. 2008) ..........................................................15

*United States v. Feingold,*
  454 F.3d 1001 (9th Cir. 2006) .......................................................8, 9

*United States v. Gruenberg,*
  989 F.2d 971 (8th Cir. 1993) ..........................................................12

*United States v. Heaton*,
   59 F.4th 1226 (11th Cir. 2023) ..................................................8, 9

*United States v. Inman*,
   558 F.3d 742 (8th Cir. 2009) ..........................................................2

*United States v. Johnson*,
   652 F.3d 918, 921 (8th Cir. 2011) .................................................2

*United States v. Jones*,
   533 F.2d 1387 (6th Cir. 1976) ......................................................23

*United States v. Joseph*,
   709 F.3d 1082 (11th Cir. 2013) ....................................................19

*United States v. Kahn*,
   58 F.4th 1308 (10th Cir. 2023) .....................................................21

*United States v. King,*
   898 F.3d 797 (8th Cir. 2018) ....................................................1, 22

*United States v. Listman*,
   636 F.3d 425 (8th Cir. 2011) ............................................. 1, 12, 13

*United States v. Lubetsky,*
   No. 23-10142, 2024 U.S. App. LEXIS 3367 (11th Cir. Feb. 13, 2024) ...............9

*United States v. Moore,*
   423 U.S. 122 (1975) ......................................................... 1, 5, 10, 19

*United States v. Smith,*
   573 F.3d 639 (8th Cir. 2009) .....................................................1, 8, 9

*United States v. Smithers*,
   92 F.4th 237 (4th Cir. 2024) .......................................................3, 18

*United States v. Woods*,
   568 F.2d 509 (6th Cir. 1978) ...................................................23, 24

**Statutes and Other Authorities:**

18 U.S.C. § 2 ...................................................................................23

21 C.F.R. § 1306.04(a). ............................................................. passim

21 U.S.C. § 841(a)(2)....................................................................24

21 U.S.C. § (b)(1)(E) .....................................................................23

21 U.S.C. § (b)(1)(C) .....................................................................23

21 U.S.C. § 841(a) ..................................................................... passim

21 U.S.C. § 841(a)(1).................................................................23, 24

21 U.S.C. § 846 ..............................................................................23

U.S.S.G. §2D1.1(c)........................................................................26

U.S.S.G. 1B1.3 .........................................................................22, 24

Medical Board of California, *Guidelines for Prescribing Controlled Substances for Pain*, (July 2023),
https://www.mbc.ca.gov/Download/Publications/pain-guidelines.pdf ........21

Medical Board of California, *Guidelines for Prescribing Controlled Substances for Pain*, (Sept. 25, 2014),
https://www.mbc.ca.gov/About/Meetings/Material/29533/rx-Materials-20140929.pdf...........................................................................21

# STATEMENT OF THE REPLY ISSUES

**ISSUE ONE:** Whether the evidence was sufficient to convict Dr. Parker of drug trafficking under 21 U.S.C. § 841(a) and 21 C.F.R. § 1306.04(a). *Ruan v. United States*, 597 U.S. 450 (2022; *United States v. King,* 898 F.3d 797 (8th Cir. 2018); *United States v. Smith,* 573 F.3d 639 (8th Cir. 2009).

**ISSUE TWO**: Whether the district court abused its discretion in charging deliberate ignorance despite not conforming to the requirements set forth in *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011). *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011); *United States v. Listman*, 636 F.3d 425 (8th Cir. 2011).

**ISSUE THREE:** Whether the district court abused its discretion when it improperly charged the jury to convict under 21 U.S.C. § 841(a) when Dr. Parker allegedly violated a state standard for prescribing. *Ruan v. United States*, 597 U.S. 450 (2022); *Gonzales v. Oregon*, 546 U.S. 243 (2006); *United States v. Moore*, 423 U.S. 122 (1975).

**ISSUE FOUR:** Whether the district court clearly erred in calculating drug weight. *United States v. Browne*, 89 F.4th 662 (8th Cir. 2023); *United States v. King,* 898 F.3d 797 (8th Cir. 2018).

**ARGUMENT**

## I. The Evidence is Insufficient to Convict Dr. Parker Because the Government Did Not Prove that he was Drug Trafficking

### A. The Court Should Decide the Disjunctive Versus Conjunctive Question

The government does not argue that the disjunctive reading of 21 C.F.R § 1306.04(a) is appropriate. It claims instead that "it is unnecessary for this Court to reach the issue in this case, as Jury Instruction Number 6 instructed the jury to consider the terms in the conjunctive." *See* Gov't Br., at 26 n. 1.

The government cites no authority for this proposition. In this circuit, "*United States v. Inman*, 558 F.3d 742 (8th Cir. 2009), governs the unique sufficiency challenge presented in this case." *United States v. Johnson*, 652 F.3d 918, 921 (8th Cir. 2011); *United States v. Chastain*, 979 F.3d 586, 592 n. 4 (8th Cir. 2020) (citing *Inman* 558 F.3d at 922). As the *Inman* court explained, where a jury is properly instructed, sufficiency is reviewed by asking "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Inman*, 558 F.3d at 747 (quotation omitted). But, where the jury is not properly instructed and there is no objection to the erroneous instruction at trial, *Inman* provides that "a conviction may be upheld against a sufficiency challenge where a rational jury could have

found, beyond a reasonable doubt, each element of the offense as charged in the jury instructions." *Id.* at 748.

Dr. Parker raised in his opening brief that he did object to Jury Instruction Number 6. *See* Parker Br., at 32-36 (explaining that counsel objected to this instruction as soon as the 2022 CDC guidance was available, and that objection was then presented again in a subsequent motion for new trial). This is significant because Instruction Number 6 improperly limited the scope of inquiry under both prongs, "legitimate medical purpose" and "usual course of professional practice," to appropriate criteria for prescribing controlled substances in Arkansas. R. Doc. 170, at 7. What's more is that Dr. Parker also objected to Jury Instruction Number 6 based on vagueness. *See* T. Tr. Vol. 2, at 1234. Dr. Parker returns to his vagueness challenge below, but as argued below, whether the phrase to measure authorization under 21 C.F.R. § 1306.04(a) is capable of definition, and what that definition is exactly, are different sides of the same coin. Counsel even specifically put the district court on notice that his challenge to defining Section 1306.04(a) will "connect somewhere." T. Tr. Vol. 2, at 1234. Dr. Parker has thus preserved his challenge in the way in which the district court defined the vague term for measuring authorization. *See e.g., United States v. Smithers*, 92 F.4th 237, 246-48 (4th Cir. 2024) (rejecting a similar waiver argument made by the government).

Accordingly, the Court may decide the issue on whether the disjunctive or conjunctive reading of 21 C.F.R § 1306.04(a) controls when measuring authorization under Title 21 (21 U.S.C. § 841(a)). And Dr. Parker submits that the Court should decide this issue given increased scrutiny of the government's enforcement.. *See* Parker 28(j) citation (referring to the American Society of Addiction Medicine's public policy statement pressing for the conjunctive reading to measure authorization). The Court should also decide this issue because it isn't appropriate for physicians to harbor doubt on which standard, the disjunctive or conjunctive, is applicable. The Constitution requires more than that. *See Johnson v. United States*, 576 U.S. 591, 595 (2015) (affirming Fifth Amendment requires fair notice of criminal law to avoid arbitrary enforcement).

In any event, the government does not appear to contest that it is the conjunctive reading that controls sufficiency in this case. *See* Gov't Br., at 26. Accordingly, even if the Court declines to decisively decide the disjunctive versus conjunctive controversy, it should still vacate Dr. Parker's convictions if there was not sufficient evidence to prove that he prescribed both "other than for a legitimate medical purpose" and "outside the usual course of professional practice."

### B. Dr. Parker's Convictions Should be Vacated Because the Government Did Not Prove that he was Engaged in Drug Trafficking

The government returns to arguing that Dr. Parker was drug trafficking, *i.e.* prescribing for other than a legitimate medical purpose, because he prescribed in

4

excess of the daily MME requirement in Arkansas. *See* Gov't Br., at 26-27. That is, the government is solely focused on the increased dose that Dr. Parker prescribed to his patients. For example, it highlights that Dr. Parker's prescription of Oxycodone to N.C. was double the dose of what he was previously prescribed. *Id.* It also adds that "there was no objective finding for increasing N.C.'s opioid medications," *see* Gov't Br., at 14, further charging that Dr. Rubenstein testified that Dr. Parker's prescriptions of *additional* controlled substances to N.C. were not supported by the information in the patient file. *Id.* at 27. Again, focusing on the *increase* in pain medication that Dr. Parker prescribed. This is not prescribing for "other than a legitimate medical purpose," and it is not the drug trafficking that Congress intended for 21 U.S.C. § 841(a) to target. *See United States v. Moore,* 423 U.S. 122, 137 (1975) (affirming the harsh penalties for unlawful distribution were deemed by Congress to be an appropriate sanction for drug trafficking by a registered physician). And what's more is that Dr. Parker actually decreased N.C.'s prescriptions over the tenure of his care.

Undeterred, the government directs that Dr. Parker was engaged in drug trafficking because Dr. Rubenstein testified that there were no objective findings to support adding fentanyl to N.C.'s prescriptions, nor was there an explanation for why it was added. *See* Gov't Br., at 14. But this issue again is focused on *increasing* N.C.'s existing pain medications to treat chronic pain—albeit this time by not only

increasing the dose of N.C.'s medications but by *adding* another type of opioid to treat pain. Moreover, Dr. Rubenstein acknowledged that N.C. had his hand wrapped because he recently had his finger amputated. T. Tr. Vol. 1, at 672 ("So other than seeing a hand wrapped, there's nothing objective that correlates."). There most certainly was information, and specifically objective findings, to support the increase in prescriptions that Dr. Parker prescribed. That the information documented did not support the increase in the eyes of Dr. Rubenstein, who categorically rejects prescribing Oxycodone 30mg for non-cancer chronic pain in the first place is not tantamount to a finding of drug trafficking. *See* T. Tr. Vol. 1, at 743 ("It shouldn't be a go-to for anyone, unless we're talking really about end stage cancer, palliative care, hospice type care."). Again, the crux of Dr. Rubenstein's testimony and the government's case-in-chief was that Dr. Parker prescribed "outside the usual course of professional practice." Not that Dr. Parker did not have a legitimate medical purpose in increasing and adding controlled medications to treat his patient's existing chronic pain—which predated treatment with Dr. Parker. *See* T. Tr. Vol 2, at 917-18.

The government's argument on the prescriptions given to L.H. is also solely focused on the *increase* in medications prescribed; specifically, the more potent prescription of Oxycodone to treat L.H.'s existing pain. *See* Gov't Br., at 27. So are its arguments for the prescriptions given to G.T. and K.J.:

> Regarding G.T. and K.J., the United States introduced evidence that Parker substantially increased the amount of promethazine with codeine solution above what they had previously been prescribed without providing a rationale for doing so.

*Id.* at 27.

On G.T. and K.J., the government adds that: "There was also evidence that both men tested negative for codeine despite having been prescribed promethazine with codeine solution." *Id.* That may be so, but that does not mean that the prescriptions themselves were not for a legitimate medical purpose. Differences in opinion on whether to continue to prescribe medications following red flags is not tantamount to drug trafficking.

Here, for example, Dr. Parker's expert, Dr. Wartenberg, testified that "[s]ome doctors are more conservative, and some are more liberal in their prescribing." T. Tr. Vol. 2, at 1164. Dr. Wartenberg added that a physician should not simply turn away a patient following a red flag such as an inconsistent urine drug screen. *Id.* at 1166-70. Rather, he explained that an appropriate response is in order, which includes a discussion with the patient. *Id.* In fact, Dr. Wartenberg found that Dr. Parker did respond to red flags, like inconsistent urine drug screens, while continuing to prescribe patients their controlled medications. *Id.*

At bottom, the disagreement between Dr. Wartenberg and Dr. Rubenstein on when, and if to, continue prescribing controlled medications following red flags boils down to a disagreement on the "usual course of professional practice." Such

disagreement is detached from the decision to prescribe controlled substances in the first place—*i.e.,* prescribing for "other than a legitimate medical purpose." *See United States v. Smith,* 573 F.3d 639, 649 (8th Cir. 2009) ("Thus, the jury was unable to convict Smith unless it found a failure to adhere to prevailing medical standards and a lack of legitimate medical purpose. This dual showing is one that exceeds that required to establish medical malpractice, which focuses largely on the former finding and may or may not include consideration of the latter."); *see also United States v. Feingold,* 454 F.3d 1001, 1007 (9th Cir. 2006) (affirming that in unlawful distribution cases the pertinent inquiry is not medical malpractice, "but rather to support the absence of any legitimate medical purpose in [the practitioner's] prescription of controlled substances."). Here, Dr. Parker had a legitimate medical purpose in prescribing to his patients: To treat their existing and documented chronic pain for which they were already prescribed controlled substances.

The government tries to resist this conclusion by citing an Eleventh Circuit and Sixth Circuit case. Both cases are out-of-circuit and come from circuits that employ the disjunctive reading in measuring authorization. *See* Gov't Br., at 29-30 (citing *United States v. Heaton*, 59 F.4th 1226, 1246 (11th Cir. 2023) and *United*

*States v. Anderson*, 67 F.4th 755, 769 (6th Cir. 2023) (per curiam)).[1] [2] These cases are not pertinent for assessing whether there was sufficient evidence to support that Dr. Parker prescribed for other than a legitimate medical purpose. To remove any doubt, in *United States v. Lubetsky*, No. 23-10142, 2024 U.S. App. LEXIS 3367 (11th Cir. Feb. 13, 2024), an unlawful distribution case following *Heaton*, the Eleventh Circuit flatly stated that: "Because the evidence in this case was sufficient to prove a knowing deviation from the usual course of medical practice, it does not matter whether there was also sufficient evidence to prove a knowing lack of legitimate medical purpose." *Id.* at *3-*4.

It matters here. *See Smith,* 573 F.3d at 649 (noting that unlawful distribution requires the heightened finding that prescribing was for other than a legitimate medical purpose to convict). Whether this Court decides if the disjunctive or conjunctive reading controls unlawful distribution prosecutions, the government has conceded that the conjunctive reading controls the inquiry here. *See* Gov't Br., at 26. Because Dr. Parker did not "cease[] to distribute or dispense controlled substances as a medical professional, and act[] instead as a 'pusher,'" *Feingold*, 454 F.3d at

---

[1] *See Heaton*, 59 F.4th at 1239-40 (holding the regulation has two requirements for an effective prescription).

[2] *See United States v. Oppong,* No. 21- 3003, 2022 U.S. App. LEXIS 9475, at *15 (6th Cir. Apr. 8, 2022) (holding that "binding case law does not support [the conjunctive reading of the] jury-instructions.").

1004 (citing *Moore*, 423 U.S. at 138, 143), the evidence is insufficient to sustain his

unlawful distribution convictions.

Accordingly, Dr. Parker respectfully asks that the Court vacate his convictions

and enter a judgment of acquittal..

## II. The District Court Abused its Discretion in Giving a Deliberate Ignorance Instruction

### A. The District Court did not Identify a Particular Fact That Dr. Parker Took Deliberate Action to Avoid Learning… Because Such a Fact did not Exist [3]

---

[3] The government argues that Dr. Parker's claim that the district court failed to identify a fact, or facts, to support the use of the deliberate ignorance charge is unpreserved and should be reviewed for plain error. *See* Gov't Br., at 32. It further argues that the Supreme Court in *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011) did not set forth the requirement that a court identify a fact or facts before charging deliberate ignorance to the jury. *Id.* at 32-33.

On preservation, the government admitsthat Dr. Parker objected to the use of the deliberate ignorance instruction because there was not evidence to support its use. *Id.* This is another way of saying that there were not facts, or facts, that supported charging the jury on this concept, and thus, the district court did not, and could not, identify the same. Dr. Parker submits that this issue is thus preserved for this Court's review. On the government's latter charge, *Global-Tech* does in fact set forth that there must be facts, or facts, supporting the use of deliberate ignorance. 563 U.S. at 769. ("While the Courts of Appeals articulate the doctrine of willful blindness in slightly different ways, all appear to agree on two basic requirements: (1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact. We think these requirements give willful blindness an appropriately limited scope that surpasses recklessness and negligence."). This is not shocking. The alternative is that district courts could charge the instruction freely, even when such a charge is detached from the evidence at trial.

The government insists that the deliberate ignorance instruction was appropriately given because "there was evidence introduced indicating that N.C., L.H., and J.F. were drug addicts and that G.T. and K.J. were selling the drugs they were obtaining through Parker's prescriptions." *See* Gov't Br., at 31. But it is entirely consistent with Section 841(a) for a physician to continue prescribing controlled medications to patients following these types of red flags. *See* T. Tr. Vol. 2, at 1166-70. What may make it inappropriate is if the physician fails to investigate why patients were exhibiting these red flags to make an informed decision when continuing to prescribe medications. The government recognizes this distinction— *i.e.,* continuing to prescribe following red flags with versus without investigating. *See* Gov't Br., at 31-32.

The government claims that Dr. Parker failed to sufficiently investigate following red flags of abuse and diversion. Dr. Parker disagrees, and so did his expert, Dr. Wartenberg. T. Tr. Vol. 2, at 1166-70. It was the jury's role to decide whether the investigative steps employed by Dr. Parker were sufficient. It was not appropriate for the district court to resolve that inquiry on its own and find that Dr. Parker did not appropriately respond to signs of abuse and diversion such that he took "deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts." *See Global-Tech Appliances, Inc. v. SEB S.A.,* 563 U.S. 754, 769-70 (2011); *United States v. Listman*,

636 F.3d 425, 431 (8th Cir. 2011) ("Ignorance is deliberate if the defendants were presented with facts putting them on notice criminal activity was particularly likely and yet intentionally failed to investigate." (citation omitted)).

Bottom line is that it was not appropriate for the district court to resolve this issue and find that prescribing in the face of abuse or diversion is tantamount to "wrongdoing." *See Global-Tech*, 563 U.S. at 769 ("Under this formulation, a willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing…" (citation omitted)). It was thus improper for the district court to charge deliberate ignorance here.

### B. Dr. Parker Did Not Contest Abuse and Diversion

The government concedes that the deliberate ignorance instruction is only appropriate where the defendant asserts a lack of guilty knowledge, but the evidence supports an inference of deliberate ignorance. *See* Gov't Br., at 31 (citing *United States v. Florez*, 368 F.3d 1042, 1044 (8th Cir. 2004) (quoting *United States v. Gruenberg*, 989 F.2d 971, 974 (8th Cir. 1993)).

Dr. Parker did not contest that some patients were abusing and diverting controlled substances he prescribed. He knew, and because of that knowledge he investigated and followed up with patients to address abuse, diversion, and other red flags. *See* T. Tr. Vol. 2, at 1166-70 (Dr. Wartenberg testifying that Dr. Parker followed up with and discussed red flags with patients); *See also* T. Tr. Vol. 2, at 987-89 (Q:

"You testified that an inconsistent result does not automatically result in firing a patient?" A: "Nothing results in firing the patient."); *Id.* at 1079 (Dr. Parker testifying that he was concerned that N.C. may be abusing opioids, clarifying that this is always a concern).

Because Dr. Parker did not contest his knowledge of red flags, namely abuse and diversion, the district court abused its discretion in giving a deliberate ignorance instruction. *See Listman*, 636 F.3d at 431 (affirming that deliberate ignorance is not appropriate where the evidence implies that defendant could only have had either actual knowledge or no knowledge of the facts in question).

Moreover, abuse and diversion were beside the point in this case because Dr. Rubenstein testified that Dr. Parker's prescriptions were unauthorized solely based on the doses prescribed, which, in his opinion, should be reserved for palliative and hospice-type care. *See* T. Tr. Vol. 1, at 743. Dr. Rubenstein also remarked that he rarely sees the doses of Promethazine HCl that Dr. Parker prescribed in practice. *Id.* at 725. In Dr. Rubenstein and the government's view, Dr. Parker's prescriptions were unauthorized given, what they view as, his excessive prescribing. The government did not need to rely on abuse and diversion to prove its case, nor was it the crux of its case-in-chief at trial. Instead, the weight of trial evidence was focused on the MME/doses that Dr. Parker prescribed. Despite that focus, the district court gave the deliberate ignorance charge on abuse and diversion, anyways. This was an abuse of

discretion. *See United States v. Corrales-Portillo*, 779 F.3d 823, 831 (8th Cir. 2015) (affirming that the deliberate ignorance charge is "particularly appropriate when the defendant denies any knowledge of a criminal scheme despite ***strong*** evidence to the contrary.").

## C. The Improper Deliberate Ignorance Instruction Impacted the Outcome of Trial.

The government claims that "[Dr.] Parker's claim that the willful blindness instruction somehow invited the jury to convict him on a basis other than guilt of the offenses charged is without merit." *See* Gov't Br., at 33. That's because, in the government's view, "[t]he argument ignores the language of the instructions given to the jury. Prior to being given the willful blindness instruction, the jury was instructed regarding the elements of the charged offenses." *Id.*

The government fails to cite any part of the record to support its claim. It cites no authority to support its argument either. True, the district court did, in a preceding instruction, define the elements of the charged offense. *See* R. Doc. 170 at 6-7. That does not change the fact that it later added that: "You may find that the defendant acted knowingly if you find beyond a reasonable doubt that...," before adding that: "A willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts." *Id.* at 18. Together, these instructions press the jury that they may find Dr. Parker acted knowingly, but neither specifies to what end. The instructions

thus invite the jury to find that Dr. Parker knowingly prescribed Oxycodone and/or Promethazine HCl in an unauthorized manner solely based on addiction and diversion. And that conclusion is, in fact, inevitable because the instructions unequivocally state that a willfully blind defendant takes deliberate actions to avoid a high probability of *wrongdoing*. *See id.*

Reading the deliberate ignorance charge as a whole, it is clear that the district court improperly equated prescribing in the face of diversion or addiction as unauthorized prescribing under 21 U.S.C. § 841(a). Instruction Number 6, which defined the elements of unauthorized prescribing, *See* Gov't Br., at 33, does not cure the error here because this Court reviews "the instructions given as a whole." *United States v. Farish*, 535 F.3d 815, 821 (8th Cir. 2008) (internal quotation marks and citation omitted).

Accordingly, because the deliberate ignorance instruction improperly invited the jury to convict if Dr. Parker prescribed in the face of diversion or addiction, the Court should reverse his convictions. *See e.g., United States v. Dooley*, 580 F.3d 682 (8th Cir. 2009) ("But where, as here, the evidence is in conflict and the jury was obviously confused by a correctable error in the instructions, we cannot say that the error was harmless.").[4]

---

[4] As in *Dooley*, the evidence was in conflict here. While Dr. Rubenstein testified that Dr. Parker issued unauthorized prescriptions for controlled substances, Dr. Wartenberg opined that Dr. Parker's prescriptions were authorized, and further,

## III. The District Court Abused its Discretion Charging the Jury to Convict Dr. Parker Based on a State Standard for Prescribing

### A. Dr. Parker's Challenge to the Jury Instruction is not Waived

The government claims that Dr. Parker waived his challenge to the district court's jury instruction, where it defined prescribing for "other than a legitimate medical purpose" and the "usual course of professional practice," by using the state standard in Arkansas. *See* Gov't Br., at 34-35. The government mischaracterizes the record, and it improperly narrows the scope of Dr. Parker's objection made in the district court below.

During the charge conference the district court and the parties were discussing the special instruction involving Count One on whether Dr. Parker's prescriptions caused N.C.'s death (Jury Instruction Number 7) and the willful blindness instruction (Jury Instruction Number 14). T. Tr. Vol. 2, at 1231-35. Those are the only instructions that the Court is discussing in the portions of the transcripts that the government cites. *See* Gov't Br., at 19 (citing T. Tr. Vol. 2, at 1233-34). It was not until the following page in the transcripts, T. Tr. Vol. 2, at 1235, after the parties had stopped discussing Dr. Parker's vagueness challenge, that the Court stated: "Okay. I

---

that a physician can properly continue to prescribe the face of addiction and diversion instead of simply abandoning patients. *See* T. Tr. Vol. 2, at 1164-70. Something which, in Dr. Wartenberg's opinion, Dr. Parker did here. *See id*.

think that they will. So let's ***start*** on 16[5], which is the – let's see, what did I do with that?" *Id.* The government mischaracterizes the record, and its claim of waiver is belied by the transcripts of the charge conference.

Even if the government were correct, such that Dr. Parker's only challenge to Instruction Number 6 was on vagueness, waiver is still unfounded. Specifically, counsel for Dr. Parker stated:

> Well, what I'm saying is, is that we believe that the lack of a proper definition renders it void for vagueness as applied. Obviously, people have been tried on this and the Courts have not held it as void for vagueness, but we don't want to waive that argument. ***Maybe it'll connect somewhere***. And so -- but assuming, without waiving that --

T. Tr. Vol 2, at 1234.

Whether the phrase to measure authorization under 21 C.F.R. § 1306.04(a) is capable of definition, and what that definition is exactly, are different sides of the same coin. Counsel even specifically put the district court on notice that his challenge to defining Section 1306.04(a) will "connect somewhere." *Id.* Dr. Parker has thus preserved his challenge on the way in which the district court defined the

---

[5] The transcript erroneously includes "16" instead of "6." This is evidenced by the substance of the dialogue that follows: "There are -- there are no specific guidelines concerning what is required to support a conclusion that a -- that a Defendant physician acted outside the usual course of professional practice, and for other -- other than a legitimate medical purpose." T. Tr. Vol 2, at 1235. There were also only 15 jury instructions given at trial. *See* R. Doc. 170 at 1-20.

vague term for measuring authorization. *See e.g., Smithers*, 92 F.4th at 246-48 (rejecting a similar waiver argument made by the government).

Dr. Parker thus respectfully submits that the Court should review his challenge for abuse of discretion for the reasons outlined in his opening brief. *See* Parker Br., at 32-36. If, however, the Court finds that he has failed to preserve this issue, Dr. Parker submits that the Court should review for plain error.

## B. The District Court Improperly Instructed to Convict Based on State Prescribing Criteria

The government argues that the district court properly instructed the jury to measure authorization using Arkansas' guidelines for prescribing controlled substances. According to the government, the Supreme Court has resolved that the structure and operation of the Controlled Substances Act presume and rely upon a functioning medical profession regulated under the States' police powers. *See* Gov't Br., at 36 (citing *Gonzales v. Oregon*, 546 U.S. 243, 270-71 (2006)). Despite this holding, however, the federal government still policies the medical profession and prosecutes physicians under Title 21. The Supreme Court, in *Ruan v. United States*, 597 U.S. 450 (2022), acknowledged that such prosecutions still exist. *See id.* at 468. With that understanding, in Section 841(a) prosecutions, the jury is to consider whether the defendant acted "in accordance with a standard of medical practice generally recognized and accepted in the United States." *Moore*, 423 U.S. at 138-39 (citation omitted).

That is the standard for unlawful distribution prosecutions. The government admits as much in its brief. Relying on *United States v. Joseph*, 709 F.3d 1082, 1095 (11th Cir. 2013) (abrogated on other grounds), the government acknowledges that it is not error to charge that defendants acted in accordance with a standard of medical practice generally recognized and accepted in the United States because that instruction:

> [D]id not suggest that the jury must evaluate the conduct of the defendants against a single national standard of practice. Instead, the instruction required the prosecution to prove that the actions of the defendants were inconsistent with *any* accepted standard of professional practice.

*See* Gov't Br., at 38. "Any standard" is exactly that: "*a* standard of medical practice generally accepted in the United States." *See id*. True, Arkansas is one such standard which is accepted throughout the United States. It, of course, is not the only standard. This is the point that Dr. Parker made in his opening brief: "In a state where a 100 MME is the high bar for prescribing – is a prescription of 110 MME criminal? No, of course not." *See* Parker Br., at 43.

In Section 841(a) prosecutions, Congress deliberately chose to cast a wide net in defining when a prescription is authorized. As the government points out, this is reflected in both Supreme Court and Eleventh Circuit precedent, in that to convict a physician for unauthorized prescribing, the government must prove that their

prescribing deviated from what is generally accepted in the United States. *See* Gov't Br., at 37-38.

Accordingly, the district court abused its discretion in limiting the jury's inquiry to only *one* standard of prescribing that is generally accepted in the United States instead of broadening its' inquiry to *a* standard of prescribing that fits that mold.

### C. Dr. Parker Suffered Prejudice from the Erroneous Jury Instruction

The government argues that even if the district court erred in instructing the jury, Dr. Parker cannot prevail because he did not suffer prejudice from that error. *See* Gov't Br., at 40. The government is mistaken, and the prejudice is easy to follow.

In Arkansas, Regulation 2 of the Arkansas State Medical Board defined excessive prescribing of opioids for chronic pain as being the same as the CDC Guidelines (50 MMEs per day) unless the physician has documented certain specified information. *See* Gov't Br., at 11. This was misguided by Arkansas given the CDC's subsequent guidance in 2022, where it explained that it was ill-advised to enshrine its 2016 MME guidance into law. *See* Parker Br., at 33.

In California, by contrast, the threshold is 90 MMEs per day, which is nearly double that of Arkansas and the 2016 CDC guidelines.[6] Even dating as far back as

---

[6] Medical Board of California, *Guidelines for Prescribing Controlled Substances for Pain* (July 2023), https://www.mbc.ca.gov/Download/Publications/pain-guidelines.pdf.

2014, California acknowledged: "There are differing opinions among reputable experts and organizations as to what MED [Morphine Equivalent Dose] should trigger a consultation." [7] This led California to adopt an 80 mg per day MME back in 2014.[8]

The prejudice is clear. There exists in the United States a generally accepted prescribing standard that far exceeds the 50 MME limit that Dr. Parker was judged on at trial. It may be true that the jury *could* have found Dr. Parker guilty even under a more heightened MME standard… even where that standard is nearly twice as high as the one that the government prosecuted Dr. Parker under. Nonetheless, "[f]or this court to now essentially retry the case on appeal and opine on what verdict the jury would have reached if it had been properly instructed asks too much of an appellate court." *United States v. Kahn*, 58 F.4th 1308, 1319 (10th Cir. 2023).

Accordingly, Dr. Parker submits that he suffered prejudice from the erroneous jury instruction given at trial, and he respectfully asks that the Court reverse his convictions.

---

[7] Medical Board of California, *Guidelines for Prescribing Controlled Substances for Pain* (Sept. 25, 2014), https://www.mbc.ca.gov/About/Meetings/Material/29533/rx-Materials-20140929.pdf.

[8] Id. at 15.

**IV.    The District Court Clearly Erred in Calculating Drug Weight Because it Failed to Identify What Portion of "Overprescribed" Prescriptions were Legitimate and Improperly Used "Course of Conduct" to Balloon Drug Weight[9]**

**A. Dr. Parker was Convicted of Distribution and not Possession**

The government argues that the district court did not err in calculating drug weight. It makes that claim and does not cite to a single case in doing so. What it does cite is, U.S.S.G. 1B1.3 cmt. background, which states in pertinent part that: "[I]n a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." *See* Gov't Br., at 41-42 (citing U.S.S.G. 1B1.3 cmt. background).

This guideline was applied in *United States v. King*, 898 F.3d 797 (8th Cir. 2018). There, this Court found that the district court did not clearly err in holding the recruiter responsible for both the number of pills directly attributable to her as well as pills from other transactions because the recruiter was convicted of drug trafficking and conspiracy to commit the same under 21 U.S.C. §§ 841(a)(1), (b)(1)(C), (b)(1)(E), and 846. *Id.* at 809.

---

[9] The government does not contest Dr. Parker's submission that the district court erred in calculating drug weight because it did not determine which portion of the "overprescribed" medications were medically suitable. *See* Parker Br., at 45-46. Dr. Parker thus rests this argument on what was presented in his opening brief.

Here, by contrast, Dr. Parker was convicted of unlawful distribution only—there was no conspiracy charge at issue. While there is not much analysis on this issue in this circuit, the Sixth Circuit's decision in *United States v. Woods*, 568 F.2d 509 (6th Cir. 1978) is helpful.

There, a defendant was convicted under 21 U.S.C. § 841(a) and 18 U.S.C. § 2 for possession with intent to distribute heroin. *Id.* at 510. Possession was the charge at issue given that heroin is an illicit substance. And that was highly relevant in guiding the inquiry. Specifically, the Sixth Circuit relied on the reasoning from an earlier firearm case also dealing with unlawful possession, noting:

> Possession is a course of conduct, not an act; by prohibiting possession Congress intended to punish as one offense all of the acts of dominion which demonstrate a continuing possessory interest in a firearm. If Congress had wished to punish each act of dominion it could have done so easily by forbidding the acts of dominion instead of the course of conduct. In fact, Congress did declare the possessory acts of receiving and transporting firearms to be illegal, but Jones was not charged with performing such acts.

*Id.* at 513 (citing *United States v. Jones*, 533 F.2d 1387, 1391 (6th Cir. 1976).

This reasoning was persuasive to the *Woods* court because the possession of heroin itself was unlawful, and because, "Congress, in enacting the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 et seq., and subsequent amendments, was no doubt intent upon strengthening the enforcement of existing drug laws." *Id.* at 513-14 (finding it significant also that the statute for

unlawful distribution does not graduate the gravity of the crime of possession of heroin by the quantity possessed).

Unlike in *Woods*, possession was not the issue here. Dr. Parker was convicted of unlawfully distributing controlled substances. Distribution, as opposed to possession, is not a course of conduct, nor is distribution a type of scheme. It is a discrete act. *Cf. Woods*, 568 F.2d at 513-14. Congress has clearly spoken by allowing the government to prosecute a defendant under Section 841(a)(1) and 841(a)(2) for many different actions involving controlled substances. 21 U.S.C. § 841(a)(1);21 U.S.C. § 841(a)(2).

Congress has given the government a robust statute, Section 841(a), to prosecute drug crimes under, strengthening the enforcement of drug laws. Still, there are limits, and one such limit is based on the theory under which the government prosecutes a defendant—*i.e.,* possession versus distribution. Because distribution was the theory of this case, it was improper for the district court to consider "course of conduct" under U.S.S.G. 1B1.3 in sentencing Dr. Parker. Instead, Dr. Parker's sentence should have been limited to the drugs that he was convicted of distributing listed in the Indictment.

**B. The Court Should Remand so that Dr. Parker can be Resentenced**

The government argues that even if the district court erred in determining drug quantity, any error is harmless, and thus remanding is not appropriate. *See* Gov't Br., at 43.

True, the government is correct in directing that the district court stated that it would have imposed the same sentence without regard to how it would have decided the objections to the presentence investigation report, including the objections regarding drug quantity, in determining Dr. Parker's base offense level. *Id.* Nonetheless, the district court did not paint as broad a picture as the government advertises.

More specifically, the district court stated "that even if defendant is only held accountable for the type of drugs listed in the counts of conviction that were prescribed during these time period, he would be held accountable for 782.981 kilograms of converted drug weight, which still corresponds to a base offense level of 28. Sent. Tr., at 38-39. Based on that, the district court advised that it would still sentence Dr. Parker to the same period of imprisonment, regardless of which converted drug weight it used. *See id.* at 85 ("I would impose this same sentence regardless based upon [m]y consideration of the 3553 factors and all of the facts and circumstances of this case."). If, however, the district court adopted Dr. Parker's converted drug weight of 60,460 grams (*i.e.,* 60.46 kilograms), which reflects only the drugs the jury convicted him of prescribing, that would put him at a base offense

level of 20 (*i.e.,* at least 60 kilograms but less than 80 kilograms of converted drug weight). *See* U.S.S.G. §2D1.1(c). That is 8 levels lower than the offense level based on the converted drug weight of 873.52 kilograms which the district court used in sentencing Dr. Parker. Sent. Tr., at 38-39.

An eight-level difference is significant. Dr. Parker was sentenced based on a total offense level of 30. Sent. Tr., at 57. This holds a guideline range of 108 to 135 months given Dr. Parker's criminal history score of II. *Id.* Conversely, a base offense level of 22, eight levels lower, with a criminal history score of II, equates to 46 to 57 months. This is, at the very least, 30 months lower than the 87-month sentence the district court imposed. Sent. Tr., at 83-84. And there is every reason to believe that the district court would have varied downward from that 46 to 57-month window given that it found that the guideline rage was excessive and that a variance below the guideline rage was appropriate. *See id*.

Moreover, the tone and tenure of the district court's sentencing leaves the impression that a guideline sentence, even under an offense level of 22, is excessive and greater than necessary to impress upon Dr. Parker the seriousness of his conduct. *See id*. Nor would a guideline sentence with an offense level of 22 provide just punishment or protect the public and promote respect for the law. This was clear to the district court. *See id*.

Accordingly, the Court should remand for resentencing so that the district court can use the appropriate converted drug weight in sentencing Dr. Parker. *Cf. United States v. Hamilton,* 929 F.3d 943, 948 (8th Cir. 2019) (quoting *United States v. Dace*, 842 F.3d 1067, 1069 (8th Cir. 2016)).

## CONCLUSION

For these reasons, Dr. Parker respectfully asks that the Court vacate and reverse his convictions. In lieu of that, he respectfully submits that his case should be remanded for resentencing.

Respectfully Submitted,

s/ *Ronald W. Chapman II*
Ronald W. Chapman II, Esq. LL.M
MI Bar No. P73179
1441 W. Long Lake Rd., Ste. 310
T: (248) 644-6326
F: (248) 644-6324
RWChapman@Chapmanlawgroup.com

*Attorney for Defendant-Appellant*
*Lonnie Parker, M.D.*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because this brief contains 6,470 words excluding the parts of the brief exempted by Rule 32(a)(7)(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because this brief has been prepared in proportionally spaces typeface using Microsoft Word in 14-point Times New Roman font. This brief complies with the virus scan requirements required by Local Rule 28A(h)(2) and is virus-free.

Dated: March 11, 2025

*s/ Ronald W. Chapman II*
Ronald W. Chapman II, Esq. LL.M

*Attorney for Defendant-Appellant*
*Lonnie Parker, M.D.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on  March 11, 2025, an electronic copy of the Brief of Appellant was filed with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. The undersigned also certifies that all participants are registered CM/ECF users and will be served via the CM/ECF system.

s/ *Ronald W. Chapman II*
Ronald W. Chapman II, Esq., LL.M.